IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HANS GARCIA-JORDAN,<br><br>    **Plaintiff,**<br><br>        v.<br><br>DAVID SHULKIN, SECRETARY OF THE<br>VETERANS AFFAIRS, *et al.*,<br><br>    **Defendants.** | CIVIL NO. 15-1094 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is the Motion for Summary Judgment (the "Motion") filed by Defendant David Shulkin, Secretary of Veterans Affairs ("Defendant"). Docket No. 39. Plaintiff Hans Garcia-Jordan ("Plaintiff") opposed. Docket No. 42. After considering the parties' positions and the applicable law, the Court hereby GRANTS Defendant's Motion for Summary Judgment and DISMISSES WITH PREJUDICE Plaintiff's case.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

CIVIL NO. 15-1094 (JAG)                                                          2

    The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party . . . ." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate "through submissions of evidentiary quality [] that a trial worthy issue persists." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

    In evaluating a motion for summary judgment, the Court must view the entire record "in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255; *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (internal citations omitted).

### FINDINGS OF FACT

    The following factual findings are taken from Defendant's statements of uncontested facts and supporting documentation.[1] In accordance with Local Rule 56(e), the Court only credits facts

---

[1] Plaintiff has blatantly failed to comply with Local Rule 56(c), which provides that:

    [a] party opposing a motion for summary judgment shall submit with its opposition a *separate*, short, and concise statement of material facts. The opposing

CIVIL NO. 15-1094 (JAG)                                                                                           3

properly supported by specific and accurate record citations. The court has disregarded all

argumentative and conclusory allegations, speculations, and improbable inferences disguised as

facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Munoz*,

896 F.2d at 8. The Court makes the following findings of fact:

1. From March 2013 to August 2014, Plaintiff was employed as a staff dentist at the Jack C.

    Montgomery Veterans Administration Medical Center in Tulsa, Oklahoma. Docket Nos.

    41-2 at 2; 41-12 at 4; 41-38 at 2.

2. On or around June 2013, Plaintiff was forty-seven years old. Docket No. 41-12 at 2.

3. On May 21, 2013, an Official Recruitment Checklist form was prepared for the position of

    Dentist-General Dentistry within the Veteran Affairs Caribbean Hospital System

    ("VACHS") in San Juan, Puerto Rico at the request of Dr. Gonzalo Solis ("Dr. Solis"), the

    Acting Chief of Dental Service and hiring official for the position. Docket No. 41-3; *see*

    Docket Nos. 41-9 at 4; 41-16 at 5.

---

statement shall admit, deny or qualify the facts supporting the motion for
summary judgment by reference to each numbered paragraph of the moving
party's statement of material facts. *Unless a fact is admitted, the opposing statement shall
support each denial or qualification by a record citation as required by this rule.*

(emphasis added). Plaintiff did not submit a separate statement admitting, denying, or qualifying any fact in
Defendant's Statement of Uncontested Facts ("SUMF"). Instead, in his Memorandum in Opposition to the Motion
("Opposition"), Plaintiff copied and pasted the entirety of the analysis section from Defendant's Memorandum of Law
in Support of its Motion, changed a few words, and occasionally inserted "Plaintiff's Reaction" throughout the
analysis in an attempt to contest Defendant's arguments. Docket No. 43. In addition to the procedural deficiencies
and the unacceptable format of Plaintiff's Opposition, his "reactions" are almost entirely conclusory and include only
four citations to the record. The First Circuit has consistently warned that litigants ignore Local Rule 56 at their peril.
*Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Accordingly, the Court shall consider Defendant's
SUMFs as undisputed because Plaintiff has failed to adequately challenge any of the SUMFs with specific citations
to the record. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for
purposes of the motion."); Local Rule 56(e) ("Facts contained in a supporting or opposing statement of material facts,
if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").
Plaintiff's counsel is further warned that this type of motion practice, including the flagrant plagiarism, shall not be
allowed in the future and may be considered sanctionable conduct.

CIVIL NO. 15-1094 (JAG)                                                                 4

4.  The Official Recruitment Checklist form, in the section titled "Additional Information for Recruitment," shows that the "Areas of Consideration" only listed "FACILITY" and did not apply "VA-WIDE." Docket No. 41-3.

5.  Article 23, section 8(C)(1) of the Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees ("AFGE") dated March 2011 (the "Master Agreement") states that the areas of consideration for vacancy announcements must first be facility-wide, in this case meaning within the VACHS, before considering candidates from other facilities of the U.S. Department of Veterans Affairs ("VA"). Docket Nos. 41-8 at 2, 11-12; 41-15.

6.  On June 3, 2013, Dr. Solis sent a Memorandum to the President of the AFGE Local 2408, requesting that the announcement to recruit a Staff Dentist in General Practice Dentistry be posted internally for a period of five days. Docket Nos. 41-4; 41-5.

7.  On June 5, 2013, the President of the AFGE Local 2408 concurred with Dr. Solis's petition and requested that the posting be notified to all employees on leave. Docket No. 41-6.

8.  On June 12, 2013, a vacancy announcement was posted through "USA Jobs." Docket No. 41-7.

9.  The electronic link to the announcement was only available to individuals employed by the VACHS through their electronic intranet page, so that someone outside the VACHS could only view the posting if a VACHS employee made the link available to that person. Docket Nos. 41-8 at 1; 41-9 at 3; *see* Docket No. 41-12 at 4.

10. In the "Job Summary" section, the announcement specified that it was for "Internal Dental Service Employees Only." Docket Nos. 41-7 at 1; 41-9 at 3. The "Who May Apply" section

CIVIL NO. 15-1094 (JAG)                                                                            5

was limited to "Agency Employees Only" and the "Agency Information" section defined
the Agency as the VACHS. Docket No. 41-7 at 1.

11.  On June 13, 2013, Dr. Arhimazda Jimenez, an endodontist at the VACHS, sent the link of
the vacancy announcement to Plaintiff. Docket Nos. 41-10; 41-11 at 6, 19-20; 41-12 at 4.

12.  On June 13, 2013, Plaintiff called Mr. John Hernandez ("Mr. Hernandez"), Human
Resources Specialist at the VACHS and point of contact for the vacancy announcement,
to inquire about the job posting and express his interest in submitting an application.
Docket No. 41-8 at 1.

13.  Mr. Hernandez spoke with Plaintiff for almost an hour, informed him that he was not an
eligible candidate for the position because he was not a VACHS permanent employee, and
stated that he would clarify the announcement. *Id.*; Docket No. 41-9 at 3-4.

14.  Mr. Hernandez was unaware of Plaintiff's age at the time. Docket No. 41-9 at 3, 5.

15.  On the morning of June 14, 2013, after verifying that no application had been submitted,
Mr. Hernandez edited the announcement from "Internal Dental Service Employees Only"
to "AREA OF CONSIDERATION CORRECTED (VACHS DENTAL SERVICE
PERMANENT EMPLOYEES ONLY)." Docket Nos. 41-8 at 1-2; 41-9 at 4; 41-14 at 1. The
updated announcement also stated "Restricted to VACHS Dental Service Permanent
Employees Only" in the "Who May Apply" section. Docket No. 41-14.

16.  Plaintiff submitted his application via fax on June 14, 2013 at 7:59 P.M., after the
announcement had been corrected. Docket No. 41-8 at 4.

17.  On June 21, 2013, Plaintiff was notified that he was "ineligible for consideration for this
position because [he was] not a VACHS permanent employee as specified in the 'Who
May Apply' section of the announcement." Docket Nos. 41-18; 41-19 at 5.

CIVIL NO. 15-1094 (JAG)                                                                 6

18. On June 21, 2013, Mr. Hernandez emailed Dr. Solis informing him that the vacancy announcement did not produce any internal candidates and asking whether to proceed with the recruitment of the two Dental residents. Docket No. 41-17.

19. That same day, Dr. Solis responded that "[d]ue to the urgency that our service has and to avoid further delay in patient treatment please proceed with the recruitment of any of our dental residents." *Id.*

20. The VACHS Dental Service residents—Mariely Santini, DMD and Stephen D. Hoyle, DMD—were referred as candidates for the vacancy on a no-announcement certificate through 38 U.S.C. § 7401 ("Title 38"), which authorizes direct hires. Docket Nos. 41-9 at 5; 41-16 at 6; 41-20.

21. On June 21, 2013, Mariely Santini was selected to occupy the position. Docket No. 41-20.

22. Although residents are not permanent employees, Mariely Santini was converted from a resident to a permanent staff employee pursuant to the legal hiring authority of Title 38. Docket Nos. 41-8 at 2; 41-9 at 5; 41-16 at 6-7; 41-21.

23. On September 17, 2013, Plaintiff filed a formal complaint of discrimination raising the following claim:

> *Whether the complainant was discriminated against based on age when, by letter dated June 21, 2013, he was notified that he was not eligible for consideration for the position of Dentist/Generalist, VM-0680-15, under Vacancy Announcement No. VHA-672-13-NX084456-JH.*

Docket No. 41-1 at 1. This claim was accepted for investigation and further processing by letter dated October 7, 2013. *Id.*

24. On or around May 2016, Plaintiff was employed as a Lead Dentist in the Atlanta Veterans Affairs Medical Center. Docket No. 41-38 at 2.

CIVIL NO. 15-1094 (JAG)                                                                    7

25. On or around May 2016, there was a vacancy announcement for a Dentist position at the VACHS. Docket No. 41-22 at 1.

26. After a vacancy announcement, the Human Resources Staff, and in some instances their supervisors, verifies the qualifications of all applicants. Docket No. 41-34 at 10.

27. For this vacancy, the interviewing panel conducted a Performance Based Interview ("PBI") process. Docket Nos. 41-23 at 10; 41-26 at 7; 41-30; 41-31; 41-32.

28. PBI is a selection process used by the Veterans Administration and the VACHS to consider, evaluate, and assess applicants with questions about their knowledge, skills, abilities, and other characteristics. Docket No. 41-24.

29. The PBI panel members only interview candidates previously qualified and referred for interview by the Human Resources Management Service. *Id.*

30. Each PBI panel member individually assesses and scores the responses of each candidate, and, after concluding the interview process, the panel submits a complete listing of the scores of all candidates in ranking order. *Id.*; Docket Nos. 41-25; 41-26 at 8; 41-27 at 9-11; 41-31; 41-32; 41-33; 41-34 at 11.

31. While the hiring official is not required to select the candidate with the highest score, he or she must provide an objective written justification explaining the decision if the highest ranking candidate is not selected. Docket No. 41-24.

32. As to the vacancy to which Plaintiff applied in 2016, Dr. Solis selected the members of the panel that would interview all qualified applicants. Docket Nos. 41-23 at 10; 41-26 at 6; 41-28 at 6.

CIVIL NO. 15-1094 (JAG)                                                                                        8

33. The panel consisted of Dr. Julio De Jesus, Dr. Francisco Rosa-Cruz, and Dr. Luis Alejandro. Docket Nos. 41-29; 41-25; 41-26 at 5; 41-27 at 6, 8; 41-28 at 6-7. Dr. Solis was not part of the panel. Docket Nos. 41-23 at 10; 41-29.

34. Prior to the interviews, the panel was provided with questions selected from a pool of PBI questions and a scoring matrix. Docket Nos. 41-26 at 7; 41-28 at 7-9; 41-30.

35. The questions posed during the interviews were appropriate for and specific to the vacant position, and had been used in the past to hire dentists at the VACHS. Docket Nos. 41-23 at 10-11; 41-26 at 7; 41-28 at 7-8.

36. Approximately twenty-seven candidates were interviewed for the vacancy. Docket Nos. 41-25; 41-33; 41-23 at 8; 41-26 at 9; 41-27 at 7; 41-28 at 8.

37. All candidates were asked the same questions, in the same order, by the same panel member. Docket Nos. 41-26 at 7; 41-27 at 7; 41-28 at 8-9.

38. During the interview process, the panel members were not informed about the candidates' EEOC activity, they were not instructed to discuss the candidates' EEOC activity, nor did they ask the candidates about any prior EEOC activity. Docket Nos. 41-26 at 6-7; 41-27 at 6-7, 11; 41-28 at 6-7, 12-13; 41-23 at 10, 14-15.

39. Once the PBI panel completed each candidate's interview, each member of the panel awarded each candidate a score based on the scoring matrix and their overall impressions throughout the interview, and the total was tallied in the PBI form. Docket Nos. 41-24; 41-30; 41-31; 41-32; 41-33; 41-23 at 16; 41-26 at 8, 10; 41-27 at 9-10; 41-28 at 9.

40. After the points were tallied, Dr. Luis Cintron ("Dr. Cintron") obtained the highest score of 74, while Plaintiff ranked 11th among the candidates with a total combined score of 63.5. *Compare* Docket No. 41-31, *with* Docket No. 41-32; *see* Docket No. 41-33.

CIVIL NO. 15-1094 (JAG)                                                                                           9

41. Dr. Cintron was selected for the vacancy because he received the highest score during the interview process. Docket No. 41-23 at 11-12, 16.

42. Dr. Cintron stood out among the candidates because the VACHS needed a doctor qualified on implant placement and Dr. Cintron possessed the needed certifications, unlike Plaintiff. Docket Nos. 41-26 at 10; 41-28 at 10-11.

43. The VA does not have a "hardship transfer" policy. Docket Nos. 41-23 at 5; 41-34 at 5, 9.

44. On May 31, 2016, Plaintiff filed a formal complaint raising the following claims:

> *Claim A*: Whether the complainant was discriminated against based on reprisal (Prior EEO activity) when, on March 25, 2016, his request for a Hardship Transfer to the VA Caribbean Healthcare System, San Juan, P.R., was denied.

> *Claim B*: Whether the complainant was discriminated against based on reprisal (Prior EEO activity) when, on May 24, 2016, he was informed that he was not selected for the position of Dentist, VM-0680-15, under Vacancy Announcement Number 672-16-EL-1659747.

Docket No. 41-22 at 1. These claims were accepted for investigation and further processing by letter dated June 27, 2016. *Id*.

## ANALYSIS

### I.   Age Discrimination Claim

Plaintiff claims that Defendant intentionally discriminated against him because of his age when Defendant notified Plaintiff that he was not eligible for consideration for the vacant Dentist position at the VACHS in June 2013. Docket No. 37 at 3-6. The Court disagrees.

### A.  Legal framework

Pursuant to the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a)(1). An employer may take an adverse action against an employee for any

reason, fair or unfair, so long as the action is not motivated by an age-based discriminatory animus.

*Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir. 1997). Therefore, an employee

bringing an ADEA claim has the burden of showing, by a preponderance of the evidence, "that age

was the 'but-for' cause of the employer's adverse action." *Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696

F.3d 128, 138 (1st Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

The framework for proving intentional age discrimination varies depending on the

availability of direct evidence. *See id*. Direct evidence "normally contemplates only those

statements by a decision maker that directly reflect the alleged animus and *bear squarely on the*

*contested employment decision*." *Vesprini v. Shaw Contract Flooring Servs., Inc.*, 315 F.3d 37, 41 (1st Cir. 2002)

(quoting *Melendez–Arroyo v. Cutler–Hammer de P.R. Co.*, 273 F.3d 30, 35 (1st Cir. 2001)) (quotation

marks omitted). It is well established that, "at a minimum, direct evidence does not include stray

remarks in the workplace, particularly those made by nondecision-makers or *statements made by*

*decisionmakers unrelated to the decisional process itself*." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86,

96 (1st Cir. 1996) (emphasis added) (citations omitted).

Here, the record contains no evidence of discriminatory statements made by a decision

maker directly related to the decision not to hire Plaintiff in June 2013. Therefore, absent direct

evidence of intentional discrimination, Plaintiff must meet the burden-shifting framework

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Soto-Feliciano v. Villa Cofresi Hotels,*

*Inc.*, 779 F.3d 19, 22-23 (1st Cir. 2015); *Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447 n.2 (1st Cir.

2009).

B. *Prima facie* case

Pursuant to the *McDonnell Douglas* framework, in ADEA claims relying on indirect evidence:

> the plaintiff must first make out a *prima facie* case for age discrimination by showing that (i) [he] was at least 40; (ii) [his] work was sufficient to meet the employer's legitimate expectations; (iii) [his] employer took adverse action against [him]; and (iv) either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action.

*Del Valle-Santana v. Servicios Legales de P.R., Inc.*, 804 F.3d 127, 129-30 (1st Cir. 2015) (citation omitted). As relevant here, "[t]o survive summary judgment and establish a *prima facie* case in a failure to hire case, plaintiffs must produce evidence on four points: (1) they are members of a protected class; (2) they applied for an open position; (3) they were not selected; and (4) their employer filled the position by hiring another individual with similar qualifications." *Gu v. Bos. Police Dep't*, 312 F.3d 6, 11 (1st Cir. 2002) (citations omitted).

Turning to the facts of this case, the Court finds that Plaintiff is a member of a protected class, applied for a job in June 2013, and suffered an adverse employment action when Defendant hired a younger individual to occupy the position. Thus, Plaintiff has met the first three prongs of the *prima facie* case. However, Defendant contends that Plaintiff fails to make a *prima facie* showing of age discrimination because Plaintiff was not qualified for the position and, thus, did not meet the employer's legitimate expectations. The Court agrees.

To meet the "qualified" prong of the *prima facie* case, Plaintiff must "adduce[] a quantum and quality of evidence of his competence . . . sufficient to prevail if a jury believed his version of the facts and disbelieved defendant's." *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1112 (1st Cir. 1989) (citation omitted); *see Acevedo-Parrilla*, 696 F.3d at 139. For purposes of this analysis, however, the

"employee's perception of himself . . . is not relevant. [Rather,] [i]t is the perception of the decision maker which is relevant." *Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 49 (1st Cir. 2008) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991)).

A review of the record shows that Plaintiff was not eligible to apply for the vacant Dentist position. The Official Recruitment Checklist form used to create the job announcement was completed three weeks before the vacancy was posted—and, thus, three weeks before Plaintiff even considered applying—and clearly stated that the only area of consideration was "FACILITY." Docket No. 41-3. Dr. Solis, who completed this form as the hiring official, specifically did not check the box for "VA-WIDE" as an area of consideration. *Id*. Additionally, the correspondence between Dr. Solis and the President of the AFGE Local 2408 also contemplated hiring from within the VACHS by requesting that the announcement be posted internally for five days. Docket Nos. 41-4; 41-5; 41-6. The initial announcement posted on June 12, 2013, which described the position as one for "INTERNAL DENTAL SERVICE EMPLOYEES ONLY," limited eligible applicants to "Agency Employees Only" and the "Agency Information" section defined the agency as the VACHS. Docket No. 41-7 at 1. When Plaintiff called to inquire about the position, Mr. Hernandez, who was unaware of Plaintiff's age at the time, informed Plaintiff that he was not eligible for the position because he was not a VACHS permanent employee. Docket Nos. 41-8 at 1; 41-9 at 3-5. The next day, before any application had been submitted, the announcement was edited to state "AREA OF CONSIDERATION CORRECTED (VACHS DENTAL SERVICE PERMANENT EMPLOYEES ONLY)." Docket No. 41-14 at 1. The updated announcement also stated "Restricted to VACHS Dental Service Permanent Employees Only." *Id*. Furthermore, at all relevant times, the vacancy announcement was available only to VACHS employees through their electronic intranet page, so that Plaintiff only became aware of the vacancy after another doctor

at the VACHS forwarded the announcement. Docket Nos. 41-8 at 1; 43 at 11. This is ample evidence that Defendant always intended to recruit internal candidates for the vacancy—as required by article 23, section 8(C)(1) of the Master Agreement—and, thus, that Plaintiff's age played no role in the recruitment process. Despite all this, Plaintiff decided to submit his application after being informed that he was ineligible and after the announcement was edited to remove any doubts that only permanent VACHS employees were eligible for consideration. Mr. Hernandez has denied knowing Plaintiff's age when these events happened, Docket No. 41-9 at 3-5, and there is no evidence on the record to the contrary. As such, there is no evidence that could suggest that Mr. Hernandez's conversation with Plaintiff and decision to edit the announcement was in any way influenced by discriminatory animus.

Plaintiff's case rests almost exclusively on his allegations that Dr. Solis, the hiring official for the vacancy, commented on several occasions that he preferred to hire younger employees because they would remain working at the VACHS for longer periods.[2] Docket Nos. 37 at 5, 7; 42 at 2; 43 at 7, 13. While it is true that "evidence of age-related comments could support an inference of pretext and discriminatory animus," *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir. 2000), this is not the case here where Plaintiff has "fail[ed] to adduce sufficient evidence that the remarks were both temporally *and* causally related to [the defendant's] decision" not to hire him, *Dunn v. Trs. of Bos. Univ.*, 761 F.3d 63, 75 (1st Cir. 2014) (quoting *Melendez v. Autogermana, Inc.*, 622

---

[2] Plaintiff also claims that the job announcement was not posted until June 2013, even though the position had been vacant since December 2012, so as to hire Dr. Santini once she finished her residency on June 30, 2013. Docket Nos. 37 at 4; 43 at 9. However, Plaintiff has not cited any evidence to show that the position had indeed been vacant since December 2012. Even if true, the record does not contain sufficient evidence for the Court to ascertain the reasons for the delay or whether the delay was in any way motivated by discriminatory animus. While Plaintiff claims that Dr. Solis indicated at his deposition that he waited until June 2013 so he could hire Dr. Santini, Docket No. 37 at 10, Plaintiff has failed to provide a transcript of this deposition and, as such, has failed to substantiate his claim. Therefore, the Court rejects this argument.

F.3d 46, 54 (1st Cir. 2010)). Even if Dr. Solis had stated that he prefers hiring younger employees, Plaintiff has submitted no evidence that these comments were in any way related to Plaintiff's application for the vacancy announced in June 2013. Plaintiff claims that Dr. Solis was aware of Plaintiff's age at the time, and knew of Plaintiff's interest in applying for the position because Plaintiff allegedly send Dr. Solis a copy of his application on June 14, 2013. Docket No. 37 at 4, 8. However, Plaintiff did not provide a copy of any such email, nor is there any evidence to suggest that Mr. Hernandez informed Dr. Solis of Plaintiff's application prior to notifying Plaintiff of his ineligibility. The record is simply devoid of any evidence showing that Dr. Solis was aware of Plaintiff's interest in the position at the time, or that Dr. Solis in any way influenced the decision to edit the announcement and deem Plaintiff ineligible for the position. *See Velazquez–Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 18 (1st Cir. 2007) (noting that "testimony and affidavits that merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge are insufficient.") (quotation marks and citation omitted). Accordingly, the Court finds that Plaintiff has failed to establish a *prima facie* case of age discrimination.

### C. Nondiscriminatory Reason and Pretext

Even assuming *arguendo* that Plaintiff had made a *prima facie* showing of discrimination, Plaintiff has failed to show that Defendant's proffered legitimate, nondiscriminatory reason for failing to hire Plaintiff was a pretext for discrimination.

Establishing a *prima facie* case creates a rebuttable presumption of discrimination and shifts the burden to the employer, who must then articulate a legitimate and nondiscriminatory reason for the adverse employment action. *Soto-Feliciano*, 779 F.3d at 23; *Gonzalez v. El Dia, Inc.*, 304 F.3d 63,

CIVIL NO. 15-1094 (JAG)                                                                                  15

68-69 (1st Cir. 2002). "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991) (citations omitted).

  Once the employer meets this limited burden, the presumption vanishes and the plaintiff must present sufficient evidence to demonstrate that the proffered reason is a pretext for discrimination. *Soto-Feliciano*, 779 F.3d at 23; *Gonzalez*, 304 F.3d at 69. "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." *Mesnick*, 950 F.2d at 824 (quotation marks and citations omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (finding that claimant must prove "*both* that the reason was false, *and* that discrimination was the real reason.").

  A claimant can establish pretext in a number of ways, such as by showing (1) that he was treated differently than other similarly situated employees, *see Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003); "that discriminatory comments were made by the key decision maker or those in a position to influence the decision maker," *Santiago-Ramos*, 217 F.3d at 55 ( (citation omitted); or, that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons," *id.* at 56 (citation omitted). However, "[i]n assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) (quotation marks and citations omitted). "To defeat a motion for summary

judgment, though, the plaintiff need only show that his ability to meet that burden turns on a genuine issue of material fact." *Soto-Feliciano*, 779 F.3d at 23.

Plaintiff cannot demonstrate that Defendant's proferred reason for not hiring Plaintiff, namely that he was ineligible for consideration because he was not a VACHS permanent employee, was a pretext for age discrimination. As discussed above, Plaintiff's main argument focuses on Dr. Solis's alleged remarks that he preferred to hire younger employees. While such comments could serve as evidence of pretext, "the weight of such [age-related] remarks is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question." *Dominguez-Cruz*, 202 F.3d at 433 n.6 (quoting *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir. 1998)) (quotation marks omitted); *see also Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir. 2001) ("Although *statements directly related to the challenged employment action* may be highly probative in the pretext inquiry, mere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not *probative of pretext* absent some discernible evidentiary basis for assessing their temporal and contextual relevance.") (quotation marks and citations omitted). The record contains no evidence that these comments were temporally proximate or related to the decision not to hire Plaintiff in June 2013. Accordingly, Plaintiff has failed to provide evidence that would allow a reasonable juror to conclude that Defendant's assertion about Plaintiff's ineligibility was a pretext for discrimination.

In an ADEA case, the burden of persuasion to show intentional age discrimination remains with the plaintiff at all times. *Gross*, 557 U.S. at 177; *Shorette v. Rite Aid of Me., Inc.*, 155 F.3d 8, 12 (1st Cir. 1998). Merely hiring a younger employee does not equate to age discrimination. *See La*

CIVIL NO. 15-1094 (JAG)                                                                        17

*Montagne v. Amer. Convenience Prod., Inc.*, 750 F.2d 1405, 1413 (7th Cir. 1984), *overruled on other grounds by Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination."); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (noting that replacing older employees with younger employees is not dispositive of age discrimination); *Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992) (same); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986) (same). In evaluating a motion for summary judgment, "the critical question is whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age." *Soto-Feliciano*, 779 F.3d at 25 (quotation marks and citation omitted). Considering the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to put forth sufficient evidence to permit a reasonable inference that his age was the motivating factor for his non-hiring.

In sum, the Court finds that Plaintiff failed to make a *prima facie* case of discrimination because he did not meet his employer's legitimate job expectations, i.e. he was ineligible to apply for the vacancy because he was not a VACHS permanent employee. Furthermore, even if the Court found that plaintiff made a *prima facie* showing of age discrimination, the evidence is insufficient to show that Defendant's legitimate, non-discriminatory reason for its employment decision is pretextual. Accordingly, this Court GRANTS Defendant's Motion and DISMISSES WITH PREJUDICE Plaintiff's ADEA discrimination claim.

II.     **Retaliation Claim**

Plaintiff also claims that, in May 2016, Defendant failed to hire him in retaliation for engaging in protected activity, namely the filing of an EEOC complaint and the commencement of the instant action.[3] Docket No. 37 at 10-11. The Court disagrees.

The ADEA's retaliation provision provides that:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). The *McDonnell Douglas* burden-shifting framework also applies to ADEA retaliation claims. *Soto-Feliciano*, 779 F.3d. at 30. To establish a *prima facie* case of retaliation, Plaintiff must show that "(i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." *Id*. Establishing an adverse employment action in a retaliatory failure-to-hire claim requires a showing that "(1) [Plaintiff] applied for a particular position (2) which was vacant and (3) for which [he] was qualified . . . [and (4)] that [he] was not hired for that position." *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006).

If a plaintiff makes this showing, "the burden of production shifts to the defendant . . . [who] must offer a legitimate, non-retaliatory reason for the adverse employment action." *Soto-Feliciano*, 779 F.3d at 30 (citation omitted); *Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.*, 425

---

[3] Plaintiff's Amended Complaint and his EEOC complaint dated May 2016 also alleges that Plaintiff's request for a hardship or compassionate transfer was denied in retaliation for his prior EEOC activity. Docket Nos. 37 at 11; 41-22 at 1. However, the record clearly shows that the VA does not have a hardship or compassionate transfer policy. Docket Nos. 41-23 at 5; 41-34 at 5, 9. As such, the Court disregards this argument.

F.3d 67, 84 (1st Cir. 2005). However, "the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation." *Ramirez Rodriguez*, 425 F.3d at 84 (quotation marks and citation omitted). It is not enough for Plaintiff to show that the proffered reason was not the real reason; instead, Plaintiff "must show that the reason given was a cover for retaliation, as it is retaliation that the ADEA forbids." *Soto-Feliciano*, 779 F.3d at 32 (citation omitted). To survive the summary judgment stage, though, Plaintiff "bears only the lighter burden of showing that a genuine issue of material fact exists about whether retaliation was the true motive for the adverse employment action in question." *Id.* at 31.

While it is clear that Plaintiff engaged in protected conduct and suffered an adverse employment action, Plaintiff cannot establish a causal nexus between the non-hiring and the protected activity. In his Amended Complaint, Plaintiff's only allegation related to causation is his claim that he "was giv[en] poor scores by the panel of interviewing doctors that do not adjust to the actual experience and/or personal appreciation of" himself. Docket No. 37 at 11. Thus, he seems to argue that the only explanation for such poor scores is retaliation. *See* Docket No. 43 at 16. The only evidence provided to support this argument is an email drafted and sent by Plaintiff. Docket No. 43-4. This is a classic example of a conclusory statement, where Plaintiff relies entirely on his own perception of his qualifications to attempt to construct a retaliation claim. It falls woefully short. *See Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 313 (1st Cir. 2016) (noting that "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (quotation marks and citation omitted).

In his Opposition, Plaintiff then claims that all VACHS Dental employees were aware that Plaintiff had initiated this lawsuit, as if knowledge of the protected conduct were sufficient for purposes of causation. Docket Nos. 42 at 3; 43 at 18. Once again, Plaintiff fails to provide a single

piece of evidence to support this claim. Instead, the evidence shows that the interviewing panel conduced a PBI process, whereby they interviewed twenty-seven previously qualified candidates using pre-selected questions and scored each candidate according to a scoring matrix. All the panel members unequivocally stated that, prior to the interviews, they were not informed about or instructed to discuss the candidates' EEOC activity, nor did they actually ask the candidates about any prior EEOC activity. While two of the panel members admitted knowing about Plaintiff's EEOC activity, Docket Nos. 41-26 at 4 and 41-28 at 4, it is not clear whether they possessed this knowledge at the time they interviewed Plaintiff.[4] In any case, the record shows that Defendant hired Dr. Cintron because he obtained the highest score, while Plaintiff ranked 11th among the twenty-seven candidates interviewed. In fact, while none of the panel members specifically remembered Plaintiff's interview, two recalled that Dr. Cintron stood out among the candidates because the VACHS needed a doctor qualified in implant placement and Dr. Cintron possessed the needed certifications, unlike Plaintiff. Docket Nos. 41-26 at 10; 41-28 at 10-11.

Plaintiff then tries to bolster his argument by claiming that Dr. Cintron was not qualified for the position and submitted false information during the interview process that resulted in his subsequent termination or resignation from the VACHS. Docket Nos. 37 at 11; 43 at 17; 49 at 2. Plaintiff then makes an inferential leap by arguing that "the interviewing panel failed to recognize that [Dr. Cintron] was lying. This was overlooked with the sole purpose [of] select[ing] him because he was a younger[5] dentist." Docket No. 49 at 2. Plaintiff, again, fails to provide any

---

[4] Even if these two panel members knew about Plaintiff's protected conduct during the interview process, Plaintiff provides no explanation as to why the third panel member gave Plaintiff almost the same score as the other two members despite not knowing about Plaintiff's protected conduct.

[5] The Court notes that it found no evidence of Dr. Cintron's age in the record, other than Plaintiff's unsubstantiated allegation that Dr. Cintron was 36 years old at the time. *See* Docket No. 49 at 2.

CIVIL NO. 15-1094 (JAG)                                                                                   21

evidence to support his contention that Dr. Cintron lied or that he no longer works at the VACHS. But even if true, absent evidence that this was known to the panel members at the time, this cannot be imputed to Defendant and, in any case, fails to address why nine other candidates received higher scores than Plaintiff. This is also irrelevant to the ultimate question of whether Defendant failed to hire Plaintiff due to his age.

In sum, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation under the ADEA as he has failed to provide sufficient evidence to establish a causal connection between his protected conduct and Defendant's decision not to hire him in 2016. Accordingly, Defendant's Motion is GRANTED and Plaintiff's ADEA retaliation claim is hereby DISMISSED WITH PREJUDICE.

## CONCLUSION

For the above stated reasons, Defendant's Motion is GRANTED and Plaintiff's case is hereby DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, March 12, 2018.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge